

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MIAO HE and TAO QIN, | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) Case No. 07 C 363 |
| MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; EMILIO GONZALEZ, Director of U.S. Citizenship and Immigration Services; PAUL NOVAK, Director of U.S. Citizenship and Immigration Services at the Vermont Service Center; and ROBERT S. MUELLER, Director of the Federal Bureau of Investigation, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Miao He and Tao Qin,[1] two foreign nationals residing in the United States, filed this suit to compel action on the processing of their applications to adjust to their status to that of permanent residents under 8 U.S.C. § 1255(a). They also seek relief under the Administrative Procedure Act, 5 U.S.C. §§ 555(b) and 706(1), and declaratory relief under 28 U.S.C. § 2201. Plaintiffs filed their applications for adjustment of status ("AOS") with U.S. Citizenship and Immigration Services ("CIS") in late December 2004.[2] Defendants are various CIS officials;

---

[1] It appears from plaintiffs' complaint that Miao He's surname is He, and Tao Qin's surname is Qin. The Court thus will refer to the plaintiffs as "Ms. He" and "Mr. Qin."

[2] Bin Li, who was named as a plaintiff in the original complaint in this lawsuit and who filed his
(continued...)

1

Michael Chertoff, secretary of the Department of Homeland Security, of which CIS is a part; and Robert Mueller, director of the Federal Bureau of Investigation, the agency responsible for processing the security checks CIS needs before it can approve plaintiffs' applications.

Ms. He asserts that she is the direct beneficiary of an I-140 immigrant visa petition that CIS has already approved. An I-140 petition is filed by an employer on behalf of a foreign national whom the employer seeks to hire because he or she is, for example, "an alien of extraordinary ability," a professional or a skilled worker, an outstanding professor or researcher, or—once upon a time—a Soviet scientist. Ms. He asserts that the I-140 petition filed on her behalf was approved on "national interest" grounds, a facet of immigration law that allows persons who have exceptional abilities or advanced academic degrees to enter and work in the U.S. Ms. He is a scientist whose research on genetic disorders has been published in the journal *Science* and elsewhere. Mr. Qin, her husband, is a derivative beneficiary of Ms. He's approved I-140 petition. Both now seek to adjust their status to that of permanent U.S. residents. Ms. He alleges that without this status, she cannot receive federal research grants or apply for certain positions in her field.

Ms. He and Mr. Qin's AOS applications had been pending with CIS for more than two years when they filed this suit. They now have been pending for nearly three years. Ms. He and Mr. Qin allege that CIS informed them in March 2007 that the delay in their cases is due to security checks that are not yet complete.

---

[2](...continued)
AOS application well before Ms. He and Mr. Qin, has since been granted permanent resident status. The Court therefore dismisses Li as a plaintiff. The Court also dismisses defendant Gerald Heinauer, director of CIS's processing center in Nebraska, where Li's application was pending when this suit was filed.

Before the court is defendants' motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiffs' complaint for failure to state a claim on which relief can be granted. For the reasons set forth below, the Court denies the motion.

## Discussion

### I. Legal standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964 (2007). To avoid dismissal, the allegations in the complaint need do no more than "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965).

The Court notes that defendants have *not* moved to dismiss plaintiffs' complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). This is noteworthy only because the thrust of defendants' arguments for dismissal is that the agency inaction plaintiffs challenge is discretionary and therefore beyond the Court's power to review. When considering a motion under Rule 12(b)(1), the district court may look beyond the complaint's jurisdictional allegations and consider additional evidence to determine whether subject-matter jurisdiction exists. See *Bowyer v. U.S. Dept. of Air Force*, 875 F.2d 632, 635-36 (7th Cir. 1989). This case, however, turns on the Court's resolution of the legal question whether the pace of CIS's adjudication lies within or outside the discretion of that agency. Therefore, it is of no practical import that defendants have moved for dismissal under Rule 12(b)(6) and not Rule 12(b)(1).

3

In any event, defendants have not submitted any materials beyond their legal briefs in support of their motion. Defendants further argue that, pursuant to Rule 12(b)(6), the Court should not consider materials plaintiffs have attached to their response. Because plaintiffs' additional materials concern facts about which there is apparently no dispute— for example, the dates of plaintiffs' filing their AOS applications and the approximate processing times at CIS facilities posted on agency websites—the Court need not consider them.

## II.    Is the pace of CIS's adjudication entirely discretionary?

Defendants' arguments for dismissal all hinge on a single question: is the pace at which CIS adjudicates plaintiffs' AOS applications entirely within its discretion, or, conversely, does the agency owe a non-discretionary duty to adjudicate the applications within some reasonable time? The Court examines separately, but with reference to this common threshold question, each of the three major arguments made by defendants.

### A.    Mandamus relief

Defendants argue that plaintiffs have no "clear right" to adjudication of their AOS applications on any particular schedule. Defs.' Mem. at 1-2. A clear right, along with a duty on the defendant agency's part to perform the act in question and the absence of an adequate alternative remedy, are required for mandamus relief. See *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002) (citing *Scalise v. Thornburgh*, 891 F.2d 640, 648 (7th Cir. 1989)). Defendants read the Seventh Circuit's discussion in *Iddir* of two Immigration and Naturalization Act ("INA") provisions to mean that the adjustment of status plaintiffs in this case seek is entirely discretionary. In *Iddir*, the Seventh Circuit held that plaintiffs who had won the chance to apply

4

for permanent resident visas under the Diversity Visa Lottery program had a clear right to timely adjudication of their applications by CIS's predecessor, the Immigration and Naturalization Service ("INS"). *Id.* at 499-500. The court contrasted the language of the INA's diversity-visa provision, 8 U.S.C. § 1153(c), which "repeatedly commands the Attorney General, in nondiscretionary language, to do a variety of tasks," with that of 8 U.S.C. § 1255(a), the AOS provision of the same act, whose operative terms are "may" and "in his [the attorney general's] discretion." *Id.*

Defendants argue that the Seventh Circuit's reasoning in *Iddir* necessarily makes adjustment of status a discretionary form of relief to which applicants can have no clear right. They read too much into *Iddir*. By contrasting the language of section 1255(a) with that of section 1153(c), the Seventh Circuit did not mean that AOS applicants could never have a right to adjudication within a particular time frame. As winners of the diversity visa lottery who already resided in the U.S., the plaintiffs in *Iddir* were still required to apply for adjustment of status under section 1255(a). *Id.* at 494. Indeed, it was the requirement of completing adjustment within the year during which the plaintiffs' visa lottery offers were valid—a requirement INS failed to do its part to meet—that led the Seventh Circuit to hold that plaintiffs had a clear right to adjudication within a reasonable time. *Id.* at 500. Thus, far from leading inexorably to the conclusion that relief under section 1255(a) is always discretionary, *Iddir* can be read to mean that, in some circumstances, agency inaction can violate an AOS applicant's clear right to adjudication of his case. In *Iddir*, that circumstance was the issuance of lottery visas valid for only one year, during which INS failed to adjudicate the lottery winners' AOS

5

applications. But *Iddir* does not foreclose the possibility that agency inaction in other circumstances may violate a clear right to relief held by AOS applicants.

The Court agrees with the significant majority of district courts that have considered the issue that AOS applicants have a clear right to adjudication of their cases within a reasonable time. The thrust of these courts' reasoning is that CIS and its predecessor could not have absolute discretion over the pace of adjudication because this could in theory lead to indefinite delay for which mandamus relief would be unavailable. *See Agbemarple v. INS*, No. 97-8547, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998) (holding that section 1255 "provide[s] a right to an adjudication . . . [and] by necessary implication the adjudication must occur within a reasonable time. A contrary position would permit the INS to delay indefinitely."); *see also Paunescu v. INS*, 76 F. Supp. 2d 896, 900 (N.D. Ill. 1999) (same). Other courts have elaborated on this reasoning by noting that such delays ultimately would contravene the agency's mandatory duty to notify applicants of the results of the adjudication under agency regulations adopted pursuant to section 1255(a). *See, e.g., Wu v. Chertoff*, No. 06-7880, 2007 WL 1223858, at *3 (N.D. Cal. Apr. 25, 2007). Moreover, in some cases similar to this one, the agency has conceded that it has a non-discretionary duty to adjudicate AOS applications, and the district court has extended this concession into a duty to adjudicate cases within a reasonable time. See *Xin Liu v. Chertoff*, No. 06-2808, 2007 WL 2433337, at *3 n.6 (E.D. Cal. Aug. 22, 2007).

Defendants argue that any duty to timely adjudicate applications under section 1255(a) would attach only after the FBI's security checks are completed: "Since the requisite checks have not been completed in this case there is no duty to adjudicate plaintiffs' applications under any scenario." Defs.' Repl. at 3-4. Defendants refer to the statutory analysis set out in *Iddir*, but

6

they do not cite to any source specifically for the proposition that CIS's duty to adjudicate would attach only after the completion of background checks. In any event, at least one other district court has rejected an argument by CIS that it cannot be held responsible for delays on the FBI's part. In granting summary judgment for the plaintiff, the court in *Singh v. Still*, 470 F. Supp. 2d 1064 (N.D. Cal. 2007), held that CIS could not make a seven-year delay reasonable by shifting blame to the FBI: "The critical issue . . . is whether the individual petitioner versus the government *qua* government is responsible" for the delay. *Id.* at 1068-69. Although the Court is not deciding now whether the delay in plaintiffs' case is reasonable, *Singh*'s "shell game" reasoning applies. CIS cannot slice thinly its duty to adjudicate AOS applications within a reasonable time such that holdups can always be blamed on someone else and CIS can thereby avoid adverse mandamus rulings.

CIS may not have direct control over the pace at which the FBI proceeds with background checks. That does not mean, however, that CIS has no control over that aspect of the adjustment-of-status process. First, in certain types of cases, CIS requests—and evidently receives—expedited processing from the FBI. *See Antonishin v. Keisler*, No. 06-2518, 2007 WL 2788841, at *5 (N.D. Ill. Sept. 20, 2007). Second, CIS has direct control over how promptly it requests the background check in any particular case. Third, CIS can follow up with the FBI to help ensure that particular background checks do not slip through the cracks. At the current stage of the case, and without knowing more, the Court cannot say that CIS's alleged lack of direct control over the pace of Ms. He's and Mr. Qin's background checks defeats their claims for relief.

Defendants also warn of the "serious national security implications" that an order forcing CIS to adjudicate plaintiffs' applications before the required security checks are complete would have. Defs.' Mem. at 3-4. Though the Court acknowledges this concern, there is no occasion at present to determine the nature of the remedy plaintiffs might be entitled to obtain if they eventually prevail. In any event, "mere invocation of national security is not enough to render agency delay reasonable per se." *Singh*, 470 F. Supp. 2d at 1069.

Therefore, the Court declines to dismiss plaintiffs' claim for mandamus relief. Plaintiffs have a clear right to adjudication of their AOS applications within a reasonable time. The Court is not yet, however, in a position to say whether the delay to date in processing plaintiffs' applications was unreasonable. When a delay in this context becomes unreasonable "is a fact-specific inquiry, which is premature at this stage." *Wu*, 2007 WL 1223868 at *3 (citing *Yu v. Brown*, 36 F. Supp. 2d 922, 934 (D.N.M. 1999), and *Gelfer v. Chertoff*, No. 06-624, 2007 WL 902832, at *7 (N.D. Cal. 2007)).

### B. APA relief

Defendants also argue that plaintiffs' claim for relief under the APA should be dismissed because the agency action in question is wholly discretionary. This argument fails for the same reasons that defendants' argument against relief under the mandamus statute fails: plaintiffs have a clear right to adjudication within a reasonable amount of time, and CIS therefore has a nondiscretionary duty to carry out the action within that same interval. The notion that the possibility of relief under the APA goes hand in hand with the chance for mandamus relief is borne out in other cases in this area. *See Xin Liu*, 2007 WL 2433337, at *3 (citing *Independence*

8

*Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997)) ("Relief under mandamus and the APA is essentially the same when a petitioner seeks to compel an agency to act on a non-discretionary duty"); *cf. Saleh v. Ridge*, 367 F. Supp. 2d 508, 511-12 (S.D.N.Y. 2005) (although it lacked subject matter jurisdiction to compel agency action under mandamus, district court did have jurisdiction to grant relief under the APA). The Court therefore declines to dismiss plaintiffs' claim for relief under the APA.

### C. Jurisdictional bar

Defendants suggest that a provision of the INA that strips district courts of jurisdiction to review certain discretionary decisions and other actions of the Attorney General or Secretary of Homeland Security, 8 U.S.C. § 1252(a)(2)(B), may mean that the Court lacks jurisdiction to hear plaintiffs' claim in this case. Defendants hedge their argument in light of *Iddir*, in which the Seventh Circuit held that this statute bars review only of "actual discretionary decisions to grant or deny relief under . . . section 1255." *Iddir*, 301 F.3d at 497.

In *Iddir*, the Seventh Circuit upheld the district court's jurisdiction to hear the case because the applicant's claim arose from agency *inaction*, not a discretionary decision or other affirmative act. This holding setting out the scope of section 1252(a)(2)(B) is the controlling law in this Circuit. This Court cannot contravene it.

But even without *Iddir*—which defendants perhaps could distinguish by arguing that INS's inaction for the finite period plaintiffs' lottery-visa offers were valid is unlike CIS's ongoing but not necessarily fatal delay here—another aspect of section 1252(a)(2)(B) would deny defendants the jurisdiction-stripping outcome they seek. The statute bars judicial review of

9

judgments granting or denying relief under the enumerated sections of the immigration laws (not at issue here, since no such judgment has been rendered) and "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion" of those officials, subject to an exception that is not important here.[3] 8 U.S.C. § 1252(a)(2)(B)(i)-(ii). Thus, this Court would lack jurisdiction over plaintiffs' case only if CIS's delay in adjudicating their applications were somehow a discretionary decision or other action. The Court has already held that it is not. Instead, plaintiffs have a "clear right" to adjudication of their AOS applications within a reasonable time. Concomitantly, defendants have a nondiscretionary duty to complete that adjudication within the same time frame.

Defendants cite to decisions by district courts that have reached the opposite conclusion, holding that they lack jurisdiction to hear cases essentially similar to this one. For example, *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006), holds that every aspect of CIS's review of AOS applications is discretionary. *Id.* at 699. The *Safadi* court inferred from the absence of time limits in section 1255(a) that Congress intended for CIS and its predecessor agency to have "discretion over not just the adjustment of status decision, but also the process employed"—including its pace. *Id.* The court rejected the applicant's argument that the statute strips district courts of jurisdiction over challenges to the results of adjudication only: this reading "would impermissibly render the word 'action' [in the statute] superfluous." *Id.* at 700.

The Court, however, joins other district courts in noting a contradiction in the reasoning of *Safadi*. At the close of its discussion, that court made the following statement:

---
[3] Plaintiffs do not make the futile argument, suggested by headings within the statute, that section 1252(a)(2)(B)(ii) bars judicial review only of decisions in removal proceedings. The law in this Circuit is that the statute's coverage is not limited in this way. *See El-Khader v. Monica*, 366 F.3d 562, 566 (7th Cir. 2004) (citing *Samirah v. O'Connell*, 335 F.3d 545 (7th Cir. 2003)).

10

> [N]ot addressed here is the question whether jurisdiction would exist in a district court to review plaintiff's case where USCIS refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application. This case presents no such facts.

*Id.* As Judge Henderson of the Northern District of California put it, *Safadi* and cases that reach the same position are

> internally inconsistent in that they conclude that courts do not have jurisdiction to review the reasonableness of the pace of processing [AOS] applications as long as the agency "is making reasonable efforts," thereby implying that a court does have some authority to review the reasonableness of the agency's efforts.

*Qiu v. Chertoff*, No. 07-5878, 2007 WL 1831130, at *2 (N.D. Cal. June 25, 2007) (citing *Li v. Chertoff*, 482 F. Supp. 2d 1172, 1177-78 (S.D. Cal. 2007)).

This internal inconsistency is shown by another case cited by defendants, *Kiromi v. District Director, USCIS Detroit*, No. 07-10446, 2007 WL 2049521 (E.D. Mich. July 13, 2007), for the proposition that AOS applicants have no clear right to adjudication that can ground mandamus relief. The court in *Kiromi* held that CIS's two-year delay in processing the plaintiff's AOS application was insufficient to show that the agency was "adverse to resolving his application"—i.e., that it was in effect refusing to adjudicate. *Id.* at *2. Thus, the rationale in *Safadi* and similar cases that district courts should not wade into an area without readily applicable statutory standards collides with these same cases' insistence that district courts can and should grant relief where delay amounts to refusal to act.

Finally, the absence of clear statutory standards does not preclude reasoned, fair judgments by courts as to the reasonableness of a delay. The court in *Singh* determined that CIS's seven-year delay in adjudicating the plaintiff's AOS applications was unreasonable and

11

granted plaintiff's motion for summary judgment after examining several factors. These included the source of the delay (the applicant or the government), the presence or absence of a timetable for adjudication prescribed by Congress, whether "human health and welfare are at stake" or whether the dispute concerns only economic regulations, and "the effect of expediting delayed action on agency activities of a higher or competing priority." *Singh*, 470 F. Supp. 2d at 1068-69 (citing *Yu*, 36 F. Supp. 2d at 934). This list of factors for judging the reasonableness of CIS's delay encompasses several of the arguments defendants make in support of their motion. If these factors truly favor their position, defendants may prevail at a later stage of litigation.

In sum, section 1252(a)(2)(B) does not strip the Court of jurisdiction to review the pace at which CIS processes plaintiffs' AOS applications.

### III. Summary judgment and other issues

Plaintiffs appear to request that the Court enter summary judgment in their favor, ostensibly in response to what they understand to be a request for summary judgment by defendants. The Court can find no record of a motion for summary judgment by defendants in this case. Moreover, defendants correctly point out that plaintiffs have not moved the Court for summary judgment. Defs.' Repl. at 2. The Court declines to take up plaintiffs' request for summary judgment, such as it is.

The Court also notes that *Song v. Klapakas*, No. 06-5589, 2007 WL 1101283 (E.D. Pa. Apr. 12, 2007), a case plaintiffs cite for their argument that the Court should remand their applications to CIS for speedy adjudication, differs from this case in one crucial respect: in that case, CIS had asked the court to remand the plaintiffs' case to the agency. In granting this

12

request, the *Song* court imposed a thirty-day deadline for adjudication, presumably to ensure that the remand did not leave the plaintiffs just where they had been in before they filed suit. Defendants do not seek a remand here, and thus there is no occasion at this time for the Court to order CIS to adjudicate the case within any particular period.

In this connection, defendants suggest that any relief ordered by this Court would "simply move plaintiffs to the head of the line" of frustrated applicants and would not solve the underlying problem of the back-up—a problem that, they argue, is up to Congress and not the courts to solve. Defs.' Repl. at 1. The Court is not, however, ordering any relief at this stage. It is denying defendants' motion to dismiss and reserving for later determination the question whether CIS's delay in adjudicating plaintiffs' AOS applications is unreasonable.

Finally, the Court declines to dismiss plaintiffs' claim for declaratory relief. Plaintiffs have shown a plausible right to a declaration that defendants have acted contrary to law.

## Conclusion

For the foregoing reasons, the Court denies defendants' motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [docket no. 16] and directs defendants to answer the complaint by no later than January 16, 2008. The case is set for a status hearing on January 23, 2008 at 9.30 a.m. for the purpose of setting a discovery schedule, if appropriate, and a trial date.

MATTHEW F. KENNELLY
United States District Judge

Date: January 2, 2008

13